IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LISA ANN MCCANN,

     Plaintiff,                         No. CIV S-10-2837 EFB

     vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

     Defendant.                 ORDER

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties' cross-motions for summary judgment motions are pending. For the reasons discussed below, the court grants the Commissioner's motion and denies plaintiff's motion.

I.    BACKGROUND

      Plaintiff formally applied for DIB and SSI on June 21, 2007, alleging a disability onset date of January 29, 2004. AR 8. Plaintiff's applications were denied initially and on reconsideration. *Id.* On March 24, 2008, a hearing was held before ALJ Michael Seng. *Id.*

////

Plaintiff, who was represented by attorney Ilija Cvetich, testified at the hearing. *Id.*

The ALJ's February 24, 2010 decision found that plaintiff had not been disabled at any relevant time.[1] *Id.* at 8-15. The ALJ made the following specific findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2009.
>
> 2. The claimant has not engaged in substantial gainful activity since January 29, 2004, her alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
> ...
>
> 3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine (20 CFR 404.1520(c) and 416.920(c)).
> ...
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.926).
> ...

///

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits under both programs. *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 and 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater,* 81 F.3d 821, 828, n.5 (9th Cir. 1995).
The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

    5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).

...

    6. The claimant is capable of performing her past relevant work as a Front Desk Clerk and Housekeeper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

...

    7. Even if the claimant could not perform past relevant work, there are a significant number of unskilled jobs available to someone of her age, education and work experience. See Medical-Vocational Rule 201.21.

    8. The claimant has not been under a disability, as defined in the Social Security Act, at any time from January 29, 2004 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

*Id.* at 10-14.

Plaintiff requested that the Appeals Council review the ALJ's decision. On August 17, 2010, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner of Social Security. *Id.* at 1-4.

II. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. <u>ANALYSIS</u>

Plaintiff makes the following arguments: the ALJ erred in failing to explain why he adopted the opinions in an examining psychiatrist's later report rather than the opinions in the psychiatrist's earlier report; failing to provide specific and legitimate reasons for rejecting another examining psychiatrist's opinion; failing to provide legally sufficient reasons for finding plaintiff not credible; finding plaintiff's mental impairments non-severe at step two, and failing to consider plaintiff's mental impairments in determining her RFC; and in finding that plaintiff was able to perform her past relevant work. Dckt. No. 16 at 5.

A. <u>The ALJ Did Not Commit Reversible Error in Weighing Physician Evidence.</u>

Plaintiff argues that the ALJ erred in 1) rejecting one of Dr. Cormier's two reports, and 2) rejecting Dr. Mehtani's opinion. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may only be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. *Id.* at 830. This test is met if the ALJ sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states his interpretation of the evidence, and makes a supported finding. *Magallanes v. Bowen*, 881 F.2d

4

747, 751–55 (9th Cir. 1989). Absent specific and legitimate reasons, the ALJ must defer to the opinion of a treating or examining physician. *Lester*, 81 F.3d at 830–31.

Dr. Cormier, a state agency examining psychologist, examined plaintiff on two occasions. His first examination was in 2007, when he prepared a report stating, "Structured diagnostic interviewing and behavioral observations suggested that Ms. McCann may currently meet the criteria necessary for the diagnosis of a major depressive disorder that is recurrent and of moderate intensity and prescription opioid dependence." *Id.* at 649. Dr. Cormier found that plaintiff's mental impairments might or were likely to significantly impair her ability to perform simple and repetitive tasks, maintain attendance, complete a normal workday or workweek, and accept and remember instructions from supervisors. *Id.* at 651. Dr. Cormier wrote that plaintiff "is only very marginally functional outside of a moderately supportive situation at the present time" but he suspected "that when her probable prescription opioid dependence issues are handled and she is a programming [sic] treated with antidepressant medications, her functional status may significantly improve." *Id.*

In the next year, 2008, Dr. Cormier again examined plaintiff and gave her a number of psychological tests. AR 735-41. He opined that plaintiff "did not appear to be honest in her responses. I discerned some obvious indications of symptom magnification and possible malingering." *Id.* at 737. He found no psychological or psychiatric impairments that would prevent plaintiff from performing simple repetitive tasks, impair her ability to maintain regular attendance and perform work activities on a consistent basis, require special or additional supervision, or prevent her from completing a normal workday or workweek without interruptions. *Id*. at 741. He found that plaintiff "may have mild impairment regarding pace." *Id.* He acknowledged that he had previously examined plaintiff and had diagnosed her with a major depressive disorder with a GAF score of 52, but did not explicitly state why his opinion had changed. *Id.* at 737.

////

1  The ALJ's opinion does not mention Dr. Cormier's 2007 opinion.  In finding plaintiff's
2  mental impairment of depression non-severe, the ALJ noted that Cormier had not diagnosed a
3  severe mental impairment in 2008.  However, the ALJ did refer to the conflict between the two
4  Cormier reports in the hearing.  He asked plaintiff's attorney "What do I do with those?  One's
5  based on testing.  One was based on subjective reaction, I think, and the second one that found,
6  had profound problems was based on testing."  *Id.* at 51.  The ALJ then questioned plaintiff
7  about Dr. Cormier's opinion that she was exaggerating her symptoms.  *Id.* at 52.

8  Plaintiff argues that the ALJ was obligated to provide specific, legitimate reasons for
9  crediting Dr. Cormier's later report rather than his earlier one.  But resolving conflicts between
10 two reports by the same doctor, where that doctor has changed his opinion over time, is not akin
11 to resolving conflicts between two doctors.  Dr. Cormier's second report is clearly inconsistent
12 with his first report and the second report was drafted at a later date after further testing.  It
13 appears that the opinions in the second report supersede the opinions given in the first report.  By
14 writing his second report, Dr. Cormier implicitly disavowed the inconsistent opinions given in
15 his first report.  In such a situation there is no legal requirement that an ALJ provide specific and
16 legitimate reasons for crediting a later report rather than an earlier, implicitly rejected report.
17 Regardless, the ALJ's discussion of the two reports at the hearing shows that he was aware of
18 Dr. Cormier's first report and rejected it because it was based on "subjective reaction" rather
19 than objective testing.

20 Plaintiff further argues that the ALJ improperly rejected the opinion of his examining
21 physician, Dr. Mehtani.  Plaintiff's attorney arranged for Dr. Mehtani to examine plaintiff in
22 November 2007.  AR 270.  Dr. Mehtani opined that plaintiff "has had chronic depression and
23 anxiety," that "she is not able to stay in any gainful employment," and that "[i]n spite of any
24 psychiatric treatment she is not likely to return to gainful employment."  *Id.*

25 ////
26 ////

6

The ALJ rejected Dr. Mehtani's opinion, writing:

> In a psychological evaluation by Sidney Cormier, Ph.D., in May 2008, the examiner concluded the claimant was less than honest in her responses and in fact had shown obvious indications of symptom magnification and possible malingering. He did not diagnose a severe mental impairment. The contrary suggestion by Janak Mehtani, M.D., is not persuasive inasmuch as it resulted from an exam arranged by the claimant's attorney in furtherance of the claimant's pursuit of these benefits and it lacks support elsewhere in the record. (Exhibit 21F, 24F, 27F).
>
> Note too that analysis of the claimant's symptoms and limitations under the four broad functional areas set out in the disability regulations for evaluating mental disorders...also leads to the conclusion that she does not have a "severe" mental impairment. It does not appear the claimant has more than "mild," if any, limitation in the first three functional areas. In activities of daily living and social functioning, the claimant appears fully capable of performing all activities of daily living. She cares for her boyfriend's son, followings a check list for maintaining order and ensuring task completion, cleans, drives an automobile to various life events, shops for groceries, movies and various household needs and handles the household finances. Neither her history nor her response to questioning suggests significant impairment sustaining concentration or persistence; she may have mild impairment regarding pace.

AR 11. Thus, the ALJ provided the following reasons for rejecting Dr. Mehtani's opinion: 1) it was inconsistent with Dr. Cormier's opinion; 2) it resulted from an exam arranged by the claimant's attorney; and 3) it lacks support elsewhere in the record, as it is inconsistent with plaintiff's activities of daily living and her history and response to questioning.

Plaintiff correctly argues that the second reason is not legitimate, as an examining doctor's findings are entitled to the same weight regardless of whether the examination was obtained by the plaintiff or by the Commissioner. *See Lester*, 81 F.3d at 832. Defendant argues that the ALJ properly discounted Dr. Mehtani's opinion because plaintiff's attorney arranged for the examination. Defendants rely on *Salee v. Chater*, in which the Ninth Circuit upheld an ALJ's rejection of an examining doctor's opinion not solely because it had been solicited by plaintiff's attorney, but because the ALJ had cited to "actual improprieties" in the report. 94 F.3d 520, 522-23 (9th Cir. 1996). Specifically, in *Salee* the report was "worded in such a way that it [struck the ALJ] as an effort by the physician to assist a patient even though there is no objective medical basis for the opinion." *Id.* at 523. Here, the ALJ opinion points to no

7

evidence of actual improprieties in Dr. Mehtani's report. However, because the ALJ provided at least one additional specific and legitimate reason for discounting Mehtani's opinion, this error is harmless.

Plaintiff further argues that the ALJ could not discount Dr. Mehtani's report on the basis that it was inconsistent with Dr. Cormier's 2008 report because Dr. Mehtani's opinions were consistent with Dr. Cormier's 2007 report, and were also consistent with the opinion of Dr. Troy, a workers compensation agreed medical evaluator. As explained above, the ALJ did not err in relying on Dr. Cormier's 2008 report rather than his 2007 report. It is true that parts of Dr. Mehtani's opinion were actually consistent with some other pieces of evidence in the record, and therefore the ALJ's statement that "it lacks support elsewhere in the record" is inaccurate when read in its most literal sense. But the more specific reason that the ALJ gave–that Dr. Mehtani's opinion is inconsistent with plaintiff's activities of daily living, as well as her history and response to questioning–is specific and legitimate, and is therefore a legally sufficient reason to reject Dr. Mehtani's opinion. *See Edlund v. Massanari*, 253 F.3d at 1156 (an ALJ is responsible for "for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities").

B.	The ALJ Did Not Err in Finding Plaintiff Not Completely Credible.

Plaintiff argues that the ALJ erred in finding her testimony not completely credible. In rejecting a claimant's subjective complaints, the administrative law judge "must provide 'specific, cogent reasons for the disbelief.'" *Lester*, 81 F.3d at 834. Without affirmative evidence showing that the claimant is malingering, the reasons for rejecting the claimant's testimony must be clear and convincing. *See id.* The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints. *See id.*; *see also Morgan v. Apfel*, 169 F.3d 595, 599 (9th Cir. 1999).

Plaintiff testified at the administrative hearing that her stress and depression interfered with her ability to work. AR 41-43. She testified that she had had a psychiatric exam at Fair

Oaks Psychiatric, that she had lost weight from and was taking Klonopin and Wellbutrin for the depression. *Id.* at 42-43. She testified that the medication "gets me through the day, but I'm still depressed." *Id.* at 43. She testified that she did not pursue psychiatric treatment because she was "depressed and not wanting to do it." *Id.* at 45. When asked why she did not continue working at her previous job providing in-home support services, she said "I would if . . . my back wasn't in so much pain . . . . I could if it wouldn't, you know, if my back didn't hurt so much, I would do it, yes." *Id.* at 30-31.

There was evidence that plaintiff was malingering. Notably, the ALJ pointed out that Dr. Cormier "concluded that the claimant was less than honest in her responses and in fact had shown obvious indications of symptom magnification and possible malingering." *Id.* at 11. Similarly, the ALJ noted that plaintiff was "described as demonstrating inappropriate illness behavior, e.g., reporting very high pain levels but behaving in ways that did not correspond to such high level of pain." *Id.* at 13. In assessing plaintiff's credibility, the ALJ wrote that there were "noted inconsistencies between the claimant's alleged symptoms and those typically observed in such patients and those observed in her when she was not being directly examined." *Id.* at 14. Because there is affirmative evidence showing that plaintiff was malingering, the ALJ was not obligated to provide clear and convincing reasons for rejecting plaintiff's testimony. Instead, he needed to provide only "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834.

In evaluating plaintiff's credibility, the ALJ wrote:

> . . . considering the various medical opinions, the clinical and radiographic findings, and the noted inconsistencies between the claimant's alleged symptoms and those typically observed in such patients and those observed in her when she was not directly being examined, it must be concluded that her claims of a disabling level of pain and limitation simply are not credible at least insofar as they suggest inability to do even light work activities. In addition to the foregoing, it is noted that the claimant's allegedly disabling injuries and symptoms long predate her alleged onset of disability. She worked in spite of back and knee problems which she relates back to 2001. Even after the alleged 2004 aggravation of her condition, the claimant worked 3 ½ hours a day bathing, dressing, and doing household work for a 175 disabled woman. Moreover,

9

> despite some slight opinion variations, no examining or non-examining physician has suggested that the claimant is precluded from performing the full range of light work.

AR 14. Earlier in the opinion, the ALJ also noted that plaintiff's activities of daily living, history, and responses to questioning did not show more than a mild mental impairment. *Id.* at 11. Thus, the ALJ gave the following reasons for finding plaintiff's testimony not completely credible: 1) her testimony was inconsistent with the medical opinions in the record; 2) her testimony was inconsistent with the clinical and radiographic findings; 3) she appeared to exaggerate her symptoms on examination; 4) the injuries that she claims render her unable to work predate her alleged date of onset of disability; 5) she in fact worked 3 ½ hours a day during the period of time that she claimed to be disabled; 6) no doctor opined that she could not do a full range of light work; and 7) her activities of daily living, history and responses to questioning do not show more than a mild mental impairment. Thus, the ALJ provided a number of specific, cogent reasons for finding plaintiff not completely credible. Plaintiff does not explain why each of these reasons is not legally sufficient.

Instead, plaintiff argues that the ALJ failed to consider the side-effects of her medication in assessing her credibility. She notes that she was taking "numerous medications" and that three doctors "expressed concerns about [her] opioid dependency." Dckt. No. 16 at 20. She writes that her "depression and opioid dependency may have been a major factor that influenced her subjective pain complaints and her credibility that the ALJ erroneously failed to consider entirely." *Id.* Similarly, plaintiff argues that her ability to engage in certain daily activities and to work 3 ½ hours a day do not translate to an ability to engage in substantial gainful activity. *Id.* But these arguments amount to nothing more than plaintiff's disagreement with the ALJ's weighing of the evidence. *See Edlund v. Massanari*, 253 F.3d at 1156 (an ALJ is responsible for "for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities").

////

Plaintiff also argues that the ALJ "did not go through the reasons why Ms. McCann's subjective complaints about her depression were not credible." Dckt. No. 16 at 18. To the contrary, the ALJ found that plaintiff's activities of daily living, history and responses to questioning did not show more than a mild mental impairment. AR 11. To the extent that this finding was inconsistent with plaintiff's testimony regarding her depression, the ALJ provided specific, cogent reasons for rejecting the testimony.

C. <u>The Commissioner Did Not Err in Finding that Plaintiff's Mental Impairments Were Non-Severe, or in Assessing Plaintiff's Residual Functional Capacity.</u>

Plaintiff argues that the ALJ erred in 1) finding that her mental impairments were non-severe at step two and 2) in not considering her mental impairments in assessing her residual functional capacity.

The ALJ found at step two that plaintiff suffered from the medically determinable impairment of depression, but that it was non-severe. A severe impairment is one that "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). An ALJ must consider all of the evidence at step two to determine whether a medically determinable impairment significantly limits the claimant's ability to perform basic work activities. *Id.* § 404.1520(a); *Bowen v. Yuckert*, 482 U.S. 137, 145 (1987). "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686–87 (9th Cir. 2005) (citation omitted). Step two is "a de minimis screening device [used] to dispose of groundless claims" and the ALJ's finding must be "clearly established by medical evidence." *Id.* at 687 (citations and quotation marks omitted).

Plaintiff argues that the record shows that her mental impairments of depression and anxiety had more than a de minimis effect on her ability to work. She cites Dr. Cormier's opinion in his first report and Dr. Mehtani's opinion. As explained in detail above, the ALJ did

not err in not crediting these opinions. Similarly, as explained above, the ALJ provided legally sufficient reasons for rejecting plaintiff's testimony regarding the severity of her depression and its impact on her ability to work.

Plaintiff further argues that "Dr. Troy, and the doctors at Anderson Medical Center believed that Ms. Mann's need [sic] psychological help when it came to her mental condition." Dckt. No. 16 at 22. But Dr. Troy's ultimate opinion was,"Frankly I am not sure what anyone is going to do for her as she is now describing all of her physicians as incompetent. I think that given her history and claims of depression that that however might be a good place to start. However, I see no reason for any such treatment on an industrial basis. If there is a problem it is likely psychosocial . . . I do not find any need for further treatment." AR 442. Thus, while Dr. Troy suggested that plaintiff be treated for depression, if anything at all, he ultimately recommended no further treatment. Dr. Troy did not find plaintiff's mental impairments significantly limited her ability to work. Plaintiff has not met her burden of showing that the ALJ erred in finding her mental impairments non-severe.

Plaintiff further argues that, regardless of whether her mental impairments were severe or non-severe, the ALJ erred in failing to consider her mental impairments in assessing her RFC. It is true that an ALJ must consider the effect of all impairments, both severe and non-severe, in assessing an RFC. *See* 20 CFR § 404.1523. But there is no indication that the ALJ failed to include plaintiff's mental limitations–specifically, his finding that plaintiff's depression "does not cause more than minimal limitation in [her] ability to perform basic mental work activities"–in determining that plaintiff had the RFC to perform a full range of light work. *See* AR 11. Although plaintiff disagrees with the ALJ's weighing of the evidence, plaintiff has not shown that the ALJ made a legal error or that his RFC finding was not supported by substantial evidence.

////

////

D.   The ALJ Did Not Err in Determining that Plaintiff Could Perform Her Past Relevant Work.

Plaintiff argues that because the ALJ did not adopt Dr. Cormier's first opinion and Dr. Mehtani's opinion regarding her mental limitations, the ALJ erred in finding that she could perform her past relevant work. As explained above, the ALJ did not err in rejecting the doctors' opinions.

IV.   CONCLUSION

The ALJ's decision is based on the proper legal standards and is supported by substantial evidence. Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor and close the case.

DATED: March 30, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

13